IN THE COURT OF APPEALS
AT KNOXVILLE

FILED

April 30, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

STATE OF TENNESSEE, ) HAMILTON JUVENILE
DEPARTMENT OF CHILDREN'S ) C.A. NO. 03A01-9710-JV-00485
SERVICES, )
                                )
        Petitioner-Appellee     )
                                )
                                )
vs.                             )
                                )
                                )
                                )
                                )
GAIL DENISE EPPS,               )
                                ) HON. SUZANNE BAILEY
        Respondent-Appellant    ) JUDGE
                                )
                                )
                                )
                                )
                                )
IN THE MATTER OF:               )
                                )
DEANTWUNG DAVE,                 )
REKENDRIA DAVE, and             )
LEBRON EPPS,                    )
                                ) AFFIRMED AND REMANDED
Children under eighteen years   )
of age                          )


KENTON HOLLOWAY, Chattanooga, for Appellant.


JOHN KNOX WALKUP, Attorney General and Reporter, and DOUGLAS EARL
DIMOND, Assistant Attorney General, for Appellee.


O P I N I O N

McMurray, J.

In this action, Gail Denise Epps (Mother) appeals from an order of the Hamilton County Juvenile Court terminating her parental rights to her three oldest children, Deantwung Dave (DOB 12-19-86), Rekendria Dave (DOB 3-9-90), and Lebron Epps (DOB 3-4-91). We affirm the judgment of the trial court.

Our standard of review is set forth in T.C.A. § 36-1-113 (c), which states:

> Termination of parental or guardianship rights must be based upon:
>
> (1) A finding by the court by clear and convincing evidence that the grounds for termination or [sic: of] parental or guardianship rights have been established; and
>
> (2) That termination of the parent's or guardian's rights is in the best interests of the child.

Thus, we review this case to determine if the statutory requirements for termination of parental rights have been demonstrated by clear and convincing evidence. The record on appeal does not contain either a transcript of the evidence or a statement of the evidence as required by Rule 24, Tennessee Rules of Appellate Procedure. It is well-settled that absent a transcript of the evidence or statement of the evidence filed in accordance with Rule 24, T.R.A.P., there is a conclusive presumption that the evidence was sufficient to support the judgment of the trial court. See McDonald v. Onoh, 772 S.W.2d 913 (Tenn. App. 1989). See also

2

Trane Co. v. Morrison, 566 S.W.2d 849 (Tenn. 1978) and Daniel v. Metropolitan Government, 696 S.W.2d 8, (Tenn. App. 1985). Thus, we would be justified in indulging in a conclusive presumption that the evidence presented at the trial supports the judgment of the trial court. Since, however, we believe that the subject under consideration, i.e., termination of parental rights, is of such great importance, we will closely examine the entire record to determine whether an error is therein shown. Upon consideration of the entire record, we are constrained to hold that there was no error and that the pleadings and reports contained in the record establish, insofar as we can determine, that the trial court was correct in finding that the state carried its burden of proving the necessary elements by clear and convincing evidence.

This case began on February 23, 1992 when the police found the children alone in the mother's apartment. The children were then 6 years, 2 years, and 11 months old respectively. The Department of Human Services' petition for temporary custody alleges that the mother had been gone from the apartment for at least two days, and there is nothing in the record to contradict this assertion. A report filed with the court on February 26, 1992 states that the eldest child, Deantwung, "was able to give the police and counselor needed information. Deantwung states he fed his brother and sister milk and bread (the milk was spoiled, the bread was in a brown paper bag and very hard)." On February 26, 1992, the Juvenile Court entered a protective custody order placing temporary care and custody of the children with the DHS.

3

Legal and physical custody of the children remained with the DHS until February 2, 1995. During the interim, the mother took parenting classes and received counseling. The DHS' periodic review summaries in the record indicate that the mother was generally cooperative, but that she refused to take a psychological examination for a long time, which apparently held up her progress. A review summary filed November 3, 1993 concludes that it is "doubtful that mother is capable of caring for children."

At some point in time not revealed by the record, the children were placed in foster care. The mother had periodic visitation with the children. A court report dated December 12, 1994 states that the mother "is having visits every week or every other week."

On February 2, 1995, physical custody of the children was returned to the mother, with DHS retaining legal custody. The next progress report, dated April 21, 1995, states that the "school reports De[antwung] has been looking sickly since moving back in with his mother." It also notes that his grades "slipped from A's to F's and he was out of school two to three days per week up until end of March." Lebron, the youngest child, showed up one morning at the Signal Center with a broken-off steak knife. The children were reported as coming to school unclean and ungroomed. Under the "emotional/behavioral" category, the report states that "Suzanne at Signal reports Rekendria and Lebron have regressed since going back home to live with Mom."

4

The family was enrolled in the "Home Ties" program, "to help with areas of hygiene, school attendance, discipline, management and family communication." However, the family had to be withdrawn from the program because the mother could not be reached for participation.

At the DHS' request, the Juvenile Court Referee recommended that physical custody be returned to the state. Apparently physical custody was removed from the mother on June 29, 1995. The children were returned to foster care. A court report dated July 12, 1995 states that the mother did not contact the state or the foster parents after their removal.

The progress report dated October 31, 1995 states the following:

> De's grades have gone back up to A's and his sister and brother are doing well since being placed back with foster parents. All three children have bonded well with their foster parents since going back to them five months ago.
>
> *      *      *
>
> Mother has never finished her parenting classes. Home Ties could not reach [mother]. [Mother] had the children back six months, and didn't work on her foster care plan with the state. We contacted Dot Stephenson to resume individual and family counseling, but [mother] failed to follow through for the second time.

The record reflects that visitation with the children after they were removed the second time was sporadic. When the mother did pick up the children for visitation, they were returned in

5

"filthy" condition. After June 25, 1996, there was only one visitation by the mother. A review summary on November 14, 1995 states, "Mother shows no interest in getting children back," and a summary dated November 12, 1996 describes a "complete lack of parental interest."

On December 6, 1996, the Department of Children's Services filed a petition to terminate mother's parental rights. On May 28, 1997, the Juvenile Court found the following:

> ... the subject children have been in the custody of Petitioner for at least six (6) months; that the conditions which led to said child's [sic] removal still persist; that there is little likelihood that said conditions will be remedied at an early date so that the children can be returned to the natural mother in the near future; that the continuation of the legal parent and child relationship greatly diminishes the children's chances of early integration into a stable and permanent home; that the Defendant; Gail Denise Epps, has failed to comply in a substantial manner on the reasonable responsibilities of the Foster Care Plan; that the Defendant ... has willfully abandoned the children for more than four (4) consecutive months next preceding the filing of the petition in this cause and it is, therefore, for the best interest of the said children and the public that all of the parental rights of the Defendant ... be forever terminated ... .

T.C.A. § 36-1-113(g) provides the following grounds for termination of parental rights, as pertinent to the present case:

> Termination of parental or guardianship rights may be based upon any of the following grounds:
>
> (1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred;
>
> (2) There has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan or a plan of care pursuant to the provisions of title 37, chapter 2, part 4;

6

(3)(A) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and

(i) The conditions which led to the child's removal or other conditions which in all reasonable probability would cause the child to be subjected to further abuse or neglect and which, therefore, prevent the child's return to the care of the parent(s) or guardian(s), still persist;

(ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be returned to the parent(s) or guardian(s) in the near future; and

(iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a stable and permanent home.

T.C.A. § 36-1-102(1)(A) defines "abandonment" as:

"Abandonment" means, for purposes of terminating the parental or guardian rights of parent(s) or guardian(s) of a child to that child in order to make that child available for adoption, that:

(i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or make reasonable payments toward the support of the child;

*       *       *

(E) For purposes of this subdivision (1), "willfully failed to visit" means the willful failure, for a period of four (4) consecutive months, to visit or engage in more than token visitation;

*       *       *

(C) For purposes of this subdivision (1), "token visitation" means that the visitation, under the circumstances of the individual case, constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child;

7

                    *       *       *

(F) Abandonment may not be repented of by resuming visitation or support subsequent to the filing of any petition seeking to terminate parental or guardianship rights or seeking the adoption of a child; and

(G) "Abandonment" does not have any other definition except that which is set forth herein, it being the intent of the general assembly to establish the only grounds for abandonment by statutory definition. Specifically, it shall not be required that a parent be shown to have evinced a settled purpose to forego all parental rights and responsibilities in order for a determination of abandonment to be made. Decisions of any court to the contrary are hereby legislatively overruled;

We concur in the trial court's finding that the mother has "willfully abandoned" her children, as that term is defined statutorily. This conclusion is amply supported by the information available in the record. It is abundantly clear that termination of the mother's parental rights, which will allow the children to be placed in a more stable and secure permanent home, is in the children's best interests under the distressing circumstances of this case.

We affirm the judgment of the trial court. The case is remanded for such other and further action as may be necessary. Costs on appeal are assessed to the appellant.

                                    _____
                                    Don T. McMurray, Judge

CONCUR:

8

_____
Houston M. Goddard, Presiding Judge


_____
Charles D. Susano, Jr., Judge

IN THE COURT OF APPEALS
AT KNOXVILLE

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | HAMILTON JUVENILE |
| DEPARTMENT OF CHILDREN'S | ) | C.A. NO. 03A01-9710-JV-00485 |
| SERVICES, | ) | |
| | ) | |
| Petitioner-Appellee | ) | |
| | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| GAIL DENISE EPPS, | ) | |
| | ) | HON. SUZANNE BAILEY |
| Respondent-Appellant | ) | JUDGE |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| IN THE MATTER OF: | ) | |
| | ) | |
| DEANTWUNG DAVE, | ) | |
| REKENDRIA DAVE, and | ) | |
| LEBRON EPPS, | ) | |
| | ) | AFFIRMED AND REMANDED |
| Children under eighteen years | ) | |
| of age | ) | |

**JUDGMENT**

This appeal came on to be heard upon the record from the Juvenile Court of Hamilton County, and briefs filed on behalf of the respective parties.  Upon consideration thereof, this Court is of opinion that there was no reversible error in the trial court.

We affirm the judgment of the trial court.  The case is remanded for such other and further action as may be necessary. Costs on appeal are assessed to the appellant.


PER CURIAM